FILED
United States Court of Appeals
Tenth Circuit

July 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL ERNEST SELLORS,

Defendant - Appellant.

No. 13-1470
(D.C. No. 1:13-CR-00140-CMA-2)
(D. Colo.)

**ORDER AND JUDGMENT**\*

Before **MATHESON**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.

Paul Ernest Sellors, proceeding pro se, appeals from his four-count conviction

under 18 U.S.C. § 505, which prohibits forging or counterfeiting the seal of a court of

the United States or knowingly concurring in using any such forged or counterfeit

seal. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, claim preclusion, and issue
preclusion. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Sellors was formerly a member of the Republic for the united States of America (RuSA), a group that created its own government, including its own courts. He testified that the RuSA community appointed him to be a judge. In this capacity, as "Judge Paul Ernest Sellors, District Court Justice," he signed four documents purporting to be orders of the "United States of America District Court, District of Minnesota." R. Supp. Vol. 1 at 2-3, 11, 15, 20-21. These documents were issued in apparent anticipation of a trial of some kind. The named plaintiff was Ronald Roy Hoodenpyle, who had been convicted of filing a false lien against a revenue officer some two years earlier in Colorado. Hoodenpyle had recently violated the terms of his supervised release.

The documents were formatted to resemble federal-district-court orders and bore a seal in a circular shape, with "United States of America District Court" appearing around the top of the circle, "District of Minnesota" around the bottom, and "Clerk of Court" along the diameter. *Id.* at 3, 11, 15, 21. They were mailed or faxed to individuals and entities, all in Colorado, who had been involved with Hoodenpyle's prosecution.

Sellors was indicted in Colorado with four counts (one for each seal) of violating 18 U.S.C. § 505.[1]  This statute provides in relevant part:  "Whoever . . . forges or counterfeits the seal of any [court of the United States], or knowingly concurs in using any such forged or counterfeit . . . seal, for the purpose of authenticating any proceeding or document . . . knowing such . . . seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both."

The district court appointed counsel to represent Sellors, but he rejected that appointment as well as the appointment of advisory stand-by counsel.  During his defense, Sellors admitted that he held himself out as an Article III Judge when he signed the documents at issue but that the court in which he was being tried (the Federal District Court for the District of Colorado) was in fact a legitimate Article III Court.  He also admitted that he signed his name next to the District-of-Minnesota seal, that he participated or concurred in sending off the documents, and that he wanted people who received the documents to get notice of upcoming judicial proceedings.  R. Vol. 4 at 102.  Notwithstanding this testimony, Sellors asserted that he neither intended to defraud nor pretended to be a district court judge.  Rather, he testified that his intent was "to invite folks to settle their disputes in our forum, The People's Court."  *Id*.

---

[1]  Hoodenpyle was identically charged under the same indictment. He entered into a plea agreement with the government and received a sentence of two months in prison—to be served consecutive to preexisting criminal sentences.

The jury convicted Sellors of all four counts, and the district court denied his post-verdict Fed. R. Crim. P. 29(c) motion for acquittal. He was sentenced to eighteen months of imprisonment on each count, to be served concurrently. He now appeals from his convictions.

*Analysis*

Liberally construing Sellors' pro se opening brief, *see United States v. Davis*, 339 F.3d 1223, 1225 (10th Cir. 2003), we identify the following arguments: (1) lack of jurisdiction; (2) improper venue; (3) invalid indictment; (4) insufficiency of the evidence; (5) violation of his First Amendment rights; (6) inadequate waiver of counsel; (7) error in allowing the government to introduce evidence concerning the "sovereign citizen" movement; and (8) invalid jury selection and composition. Any other arguments that Sellors may have intended to bring on appeal are inadequately briefed and deemed waived. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (stating that Fed. R. App. P. 28 "applies equally to pro se litigants" and requires more than "mere conclusory allegations with no citations to the record or any legal authority for support"); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (holding that arguments inadequately presented in the opening brief are waived).

I.     **Arguments Not Preserved in the District Court**

With only a few exceptions, Sellors has failed to identify where in the record he raised the issues he brings up on appeal, as required by 10th Cir. R. 28.2(C)(2). It

is not this court's task to comb through the record to determine whether he preserved his arguments for appeal. Thus, except where our review of the appellate record has shown otherwise, we assume that his arguments were not preserved. *See United States v. Barber*, 39 F.3d 285, 287 (10th Cir. 1994). At best, any unpreserved arguments were forfeited and are reviewable on appeal only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Lamirand*, 669 F.3d 1091, 1100 n.7 (10th Cir. 2012); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-30 (10th Cir. 2011). But Sellors does not argue for plain-error review, and "the failure to argue for plain error and its application on appeal [] surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1131.

Accordingly, we deem the following arguments to have been forfeited on appeal, and we do not further consider them: (1) that venue was improper because (a) his actions took place in Minnesota, not in Colorado, and (b) he "was not judged by his peers, but by citizens of the United States not of the Minnesota vicinage/community," Aplt. Br. at 33; (2) that the indictment was invalid because (a) "the people who acted as 'grand jurors' for the USA Agents also acted as USA Officers due to their 'oaths of office,'" and therefore he "was indicted by USA Officers, not by people of the states united," *id.* at 6-7, (b) the grand jurors were not of his "state or of the Minnesota state body politic," *id.* at 7, and (c) he was not given the opportunity to make a presentment to the grand jury; (3) that the evidence was insufficient as to (a) his status as a "Whoever," *id.* at 14, (b) the use of the seal to

authenticate a document, and (c) his involvement with or knowledge of the creation or use of the seal; (4) that he was prosecuted in violation of his First Amendment rights; (5) that the prosecution was required to establish intent as an element; and (6) that the jury composition and/or selection was unconstitutional.

## II.     Subject-Matter Jurisdiction

Arguments regarding subject-matter jurisdiction are not forfeitable or waivable. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Accordingly, we address those arguments we construe as jurisdictional here—namely, that the district court lacked jurisdiction because: (1) Sellors' "commercial/personhood status" was not disclosed to him, Aplt. Br. at 4, but "a status/personhood must be known and be a target of the Act in order for the USA Agents to be able to exercise their Constitutional power," *id.* at 2; (2) "Plaintiffs' authority source was not disclosed," *id.* at 3; (3) the United States could not bring this action because it "must be a corporation" and therefore it is "property," with "no standing in a Federal Court against one of the people," *id.* at 3-4; and (4) "this action was at best a copyright infringement" and "was never a criminal issue," *id.* at 3.

These arguments are patently frivolous. The district court had jurisdiction to try Sellors for violating 18 U.S.C. § 505, a criminal statute of the United States. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."); *see also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir.

2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) (rejecting similar arguments in the tax-protestor context).

## III. Indictment

Apparently challenging the sufficiency of the indictment, Sellors argues that "not one of the 'Counts' contains a charge for a Jury to determine guilt," Aplt. Br. at 6. A similar argument appeared in his Rule 29(c) motion: "[e]ach count which was submitted to the jury was in fact an exhibit and not an allegation as outlined in the Glossary meaning of Count." R. Vol. 1 at 340. It is not clear whether he challenged the indictment before filing the Rule 29(c) motion, and a challenge's timing may affect the standard of review. *See United States v. Doe*, 572 F.3d 1162, 1173 & n.9 (10th Cir. 2009) ("While a timely-raised objection to the sufficiency of the information merits de novo review, courts are less hospitable to challenges to an information later in the proceedings." (brackets and internal quotation marks omitted)). But we need not resolve this issue because the result does not turn on the standard of review.

"An indictment, or information, is sufficient if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend, and if it enables a defendant to assert a double jeopardy defense." *Id.* at

1173 (brackets and internal quotation marks omitted). Here the indictment tracked the language of § 505, setting forth the specific provisions that Sellors allegedly violated. It listed the four documents containing the seal in a table correlating each document with a particular count. Sellors does not coherently explain how it was improper for the indictment to take this form; the fact that the documents listed in the table later were introduced into evidence does not invalidate the indictment.

## IV.    Sufficiency of the Evidence

In his Rule 29(c) motion, Sellors challenged the sufficiency of the evidence on the grounds that "[t]he issue of the counterfeit seal was never established or proven" and "[n]ot one of the witnesses presented by the prosecution was able to testify as to any evidence of counterfeit." R. Vol. 1 at 341. Accordingly, he has preserved these specific arguments for appeal. *See United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) ("When a defendant challenges in district court the sufficiency of the evidence on specific grounds, all grounds not specified in the motion are waived," although "it is more precisely termed a forfeiture when there is no suggestion of a knowing, voluntary failure to raise the matter." (internal quotation marks omitted)). We review the sufficiency of the evidence de novo to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Serrato*, 742 F.3d 461, 472 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 2739 (2014).

- 8 -

Viewed in the light most favorable to the prosecution, there was ample evidence for the jury to conclude that the seals were forged or counterfeit seals of a United States court. The testimony showed that Sellors is not a federal judge and that the documents bearing the seals were not orders of the federal district court in Minnesota. An employee of the clerk's office for the federal district court in Minnesota testified that the seal "appear[ed] to be a seal from the District of Minnesota," but that it was not a genuine seal. R. Supp. Vol. 1 at 154. Recipients of the documents testified that they noticed the seal and that it played a role in their initial misconceptions that the documents were communications from the federal district court in Minnesota. During cross-examination of one of the recipients—an assistant United States district attorney—Sellors elicited testimony that the seals on the two documents he received were indeed counterfeit. Other witnesses testified about similarities between the seals on the documents and the seals of federal district courts.

What's more, a federal agent who interviewed Sellors testified that during the interview, he pointed out the seal and other features of the documents that made them seem like they came from the federal district court, not the RuSA. According to the agent, Sellors "said he understood that. He understood where there could be confusion and it looked a lot like actual official United States government documents." *Id.* at 134-35.

- 9 -

## V. Introduction of Evidence

Sellors asserts that the district court erred in allowing the government to introduce testimony about the term "sovereign citizen" over his objections. Our review is for abuse of discretion, and "[u]nder that standard, we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Hillman*, 642 F.3d 929, 938 (10th Cir. 2011).

The district court did not abuse its discretion in allowing witnesses to testify about their understanding of the "sovereign citizen" movement and its connection to the RuSA. The testimony may have aided the jury in understanding the facts and circumstances of this case. To the extent that Sellors believes the testimony was inaccurate or painted him, a former member of the RuSA, in a false light, he had the opportunity to cross-examine the government's witnesses and to call his own witnesses. And he testified on his own behalf, explaining his understanding of the term "sovereign citizen" and why he considers it to be an oxymoron.

## VI. Waiver of Counsel

Finally, Sellors asserts that he could not validly waive his right to counsel without being informed of his "presumed/assumed personhood or standing by the Prosecutor and the Court." Aplt. Br. at 28. He states that "[w]ithholding this crucial information is pivotal in the acquiring of counsel and comprehending a defendant's role in a trial," and because his "status/standing" was not disclosed, his waiver of

counsel did not comply with *Faretta v. California*, 422 U.S. 806, 835 (1975). Aplt. Br. at 28. Like his jurisdictional arguments regarding personhood and status, this argument is frivolous. To the extent that it can be construed as a challenge to the adequacy of the district court's inquiries regarding his waiver, *see Faretta*, 422 U.S. at 835 (requiring the district court to make the defendant "aware of the dangers and disadvantages of self-representation"), the record shows that two magistrate judges engaged in colloquies with Sellors, repeatedly urging him to accept counsel and attempting thorough inquiries to ensure that his waiver of counsel was knowing and intelligent. He was advised of the charges against him and the maximum penalties, and the magistrate judges discussed various disadvantages of proceeding without counsel. The court's handling of Sellors' requests to proceed pro se satisfied *Faretta*. *See United States v. Turner*, 287 F.3d 980, 983-84 (10th Cir. 2002).

### *Conclusion*

The judgment of the district court is affirmed.


Entered for the Court
Per Curiam