NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0182n.06

Case No. 17-5326

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 09, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| STEVEN A. GREEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER and LARSEN, Circuit Judges; BLACK, District Judge.[*]

**SILER**, Circuit Judge. Steven Green appeals his sentence of 211 months' imprisonment for conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine ("meth"), in violation of 21 U.S.C. § 846, and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). He argues that the district court improperly: (1) assigned six criminal history points for three non-payment of fines convictions that were not separated by intervening arrests; (2) failed to depart downward; (3) assigned criminal history points for seven misdemeanor convictions imposed when he was not represented by counsel; and (4) rendered a substantively unreasonable sentence. We affirm.

---

[*] The Honorable Timothy S. Black, U.S. District Judge for the Southern District of Ohio, sitting by designation.

**FACTUAL AND PROCEDURAL BACKGROUND**

Between December 2014 and December 2015, Green received pounds of meth from co-conspirators and distributed the drug to lower-level dealers and users. When arrested in July 2015, Green was found in possession of a loaded firearm and approximately three ounces of meth packaged for distribution. He admitted to officials that the meth and firearm belonged to him.

In November 2015, law enforcement—using a cooperating witness—attempted to purchase meth from Green. At this sting, officers seized cash and three loaded firearms. Green again admitted to officers that the meth was his and that he had received several ounces from higher-level dealers over the prior months. Then, in December 2015, officers arranged for a person to purchase meth from Green, and Green showed up at the meeting with a loaded firearm. He confessed to receiving meth from suppliers and to selling the drug to others.

In 2016, Green pleaded guilty to conspiracy to distribute meth and possession of a firearm in furtherance of the drug conspiracy. He was subject to a mandatory minimum of ten years' imprisonment for the conspiracy charge, followed by a consecutive term of imprisonment of five years to life for possession of a firearm.

At the time of sentencing, Green was held responsible for between 1.5 and 5 kilograms of a mixture containing meth. With a total offense level of 29 and a criminal history category of VI, his guidelines range was 151 to 188 months' imprisonment for the drug conspiracy and a consecutive sentence of 60 months for the firearm offense. USSG § 2K2.4(b). Prior to sentencing, Green objected to his PSR, arguing that his criminal history category should have been IV, rather than VI.

Green asserted in his sentencing memorandum that the district court should impose the statutory mandatory minimum—180 months' imprisonment. He contended that a fifteen-year sentence would be sufficient given his history and characteristics; moreover, he did not play a major role in the conspiracy and fifteen years would be the longest sentence among his co-conspirators. Green also objected to criminal history points assigned to certain offenses outlined in his PSR. He argued that "[t]hese types of charges aren't typically afforded two points under the guidelines," citing USSG § 4A1.2(c)(1).

The district court overruled Green's objections to the PSR's criminal history computations and denied his requested variance. The court stated that Green's criminal history category was a "low level VI compared to other VIs, . . . [which] supports a guideline sentence but one towards the bottom of the guidelines." Accordingly, as to the conspiracy charge, the court sentenced Green to the bottom of the guidelines range, as well as the mandatory minimum of 60 months for the firearm conviction, resulting in an aggregate sentence of 211 months' imprisonment. The district court found that the imposed sentence "would promote respect for the law, provide just punishment, afford adequate deterrence, and avoid an unwarranted sentencing disparity."

## DISCUSSION

### I. Criminal History Points for Non-Payment of Fines Convictions

First, Green argues that the district court erred in assigning him six criminal history points for "the exact same offense of nonpayment of fines," as described in paragraphs 85, 86, and 87 of his PSR. Although Green generally objected to the PSR's criminal history computation, he did not raise this precise argument as to paragraphs 85, 86, and 87 at sentencing. Thus, we review for plain error. *See United States v. Goward*, 315 F. App'x 544, 551 (6th Cir.

2009) (applying the plain error standard of review where the defendant challenged his criminal history scoring in the PSR but did not present the exact arguments raised on appeal).

Paragraph 85 describes conduct from January 22, 2008, for which Green received two criminal history points: (1) rear license not illuminated; (2) driver's license to be in possession; (3) failure to wear seat belts; and (4)–(5) non-payment of fines. Green was prosecuted on these charges in McCreary County District Court. On March 26, 2008, Counts 1 and 3 were merged, and Green pleaded guilty to Count 2. On July 16, 2009, Green pleaded guilty to Count 4, and on April 26, 2010, Green pleaded guilty to Count 5.

Paragraph 86 describes conduct from July 30, 2008, in McCreary County District Court, for which Green also received two criminal history points. Counts 2 and 3 were non-payment of fines charges. On July 16, 2009, Green pleaded guilty to Count 2, and on April 26, 2010, he pleaded guilty to Count 3. Finally, paragraph 87 sets forth conduct from February 18, 2009, in McCreary County District Court, rendering two points. This paragraph includes two non-payment of fines charges, Counts 4 and 5. Green pleaded guilty to Count 4 on July 16, 2009, and to Count 5 on April 26, 2010.

Green contends that these paragraphs of his PSR assign "six (6) criminal history points for the exact same offense of nonpayment of fines." Although Green pleaded guilty to each of the non-payment charges on two dates, the PSR reflects that the offenses were separated by intervening arrests, in that Green was arrested for each offense prior to committing another. Thus, the district court's conclusion that the three non-payment convictions are counted separately under the guidelines is not clearly erroneous. *See* USSG § 4A1.2(a)(2).

Furthermore, Green argues that Counts 1–3 from paragraph 85 should not have been assigned points under USSG § 4A1.2(c)(2), which provides that "[m]inor traffic infractions (*e.g.*,

speeding)" and "offenses similar to them, by whatever name they are known, are never counted" in a defendant's criminal history score.[1] Green acknowledges that paragraph 85 not only encompasses these infractions, however, but also includes convictions for non-payment of fines. As noted by the district court below, this offense resembles a contempt-of-court conviction under Kentucky law. *See* Ky. Rev. Stat. Ann. § 534.060(1)–(2); *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). Thus, the district court appropriately assigned points for the convictions set forth in paragraph 85. *See* USSG § 4A1.2 cmt. n.12(A).

## II.    Decision Not To Depart Downward

Second, Green argues that "the District Court erred in failing to determine that his criminal history was over represented" and by not departing downward.[2] Section 4A1.3(b)(1) of the USSG provides that a court may grant a downward departure if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Generally, we do "not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). Rather, we "presume that the district court understood its discretion, absent clear evidence to the contrary." *Id.*

Green contends that the district court did not understand its discretion to make a downward departure in this case because it "stated on three occasions that it believed the

---

[1] Green arguably raised this issue in his sentencing memorandum. Thus, we review this specific argument *de novo*. *See United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994).

[2] In his sentencing memorandum filed prior to sentencing, Green moved the court to impose a sentence below the guidelines "and/or for a variance." Green requested a downward variance during sentencing, rather than a downward departure. These are distinct concepts. *United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009). On appeal, Green only argues that the district court should have granted a downward departure. Thus, we will only address Green's contention that the district court should have departed downward.

Defendant's criminal history category of VI was over-represented but still found the Defendant to have a criminal history category of VI." The district court, however, considered Green's arguments and ultimately rejected his assertion that a below-guidelines sentence was necessary to accurately represent his criminal history. It submitted that Green was a "low level" criminal history category VI, and it sentenced him accordingly by imposing a bottom-of-the-guidelines sentence.

Nothing in the sentencing transcript indicates that the district court was unaware of its authority to depart downward. Indeed, the district court expressly stated that although Green seemed an "awful low level VI compared to other VIs," the disparity could be addressed in the court's consideration of the 18 U.S.C. § 3553(a) factors. Green has not rebutted the presumption that the district court understood its discretion to depart. Accordingly, we affirm the district court's decision not to depart downward. *See Santillana*, 540 F.3d at 431.

## III. Criminal History Points for Misdemeanors with Ambiguous Representation

Next, Green argues that the district court should not have assigned criminal history points to seven of his convictions because "they were in violation of Green's constitutional right to counsel." Green bases this contention on the fact that paragraphs 81–82, 84–87, and 90 of the PSR provide "no indication of attorney representation." Because Green did not raise this argument with the court below, it is subject to plain error review. *See United States v. Prater*, 766 F.3d 501, 518 (6th Cir. 2014).

Based on the Sixth Amendment's guarantee that the accused in a criminal prosecution has the right to assistance of counsel, "an uncounseled misdemeanor conviction may be included in calculating the criminal history category only if the conviction did not result in a term of imprisonment." *United States v. Moles*, 79 F. App'x 179, 180 (6th Cir. 2003) (citing *Nichols v.*

*United States*, 511 U.S. 738, 746–47 (1994)); *see* U.S. Const. amend. VI. Here, Green received a sentence of imprisonment, and he contends that "the Probation Department and government failed to prove that [he] was afforded his constitutional right to counsel at the time he changed his plea and was sentenced." However, "a presumption of regularity attaches to state court proceedings, including the waiver of counsel preceding a guilty plea." *Moles*, 79 F. App'x at 180.

Green has not refuted the presumption that he was either represented by counsel or that he waived this right below. He has not, therefore, proven that the district court committed plain error by counting these convictions toward his criminal history score.[3]

## IV.     Substantive Reasonableness of Sentence

Finally, Green argues on appeal that the district court imposed a substantively unreasonable sentence. A sentence may be substantively unreasonable if the district court: (1) arbitrarily selected the sentence; (2) based the sentence on "impermissible factors"; (3) failed "to consider pertinent § 3553(a) factors"; or (4) gave "an unreasonable amount of weight to any pertinent factor." *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007) (internal citation omitted). In determining whether an imposed sentence is substantively reasonable, we consider whether the length of the sentence imposed is "greater than necessary" to achieve the sentencing goals of 18 U.S.C. § 3553(a). *United States v. Tristan-Madrigal*, 601 F.3d 629, 633–34 (6th Cir. 2010). "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review," *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007), and "[t]he defendant shoulders the burden of showing substantive unreasonableness," *United States*

---

[3] Green argues that the government bears the burden to establish that he was represented by counsel for these offenses. But in this context, the defendant "bears the burden of showing that a prior conviction is invalid because of a failure to appoint counsel." *United States v. Jackson*, 627 F. App'x 460, 464 (6th Cir. 2015).

*v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011). We presume the reasonableness of a within-guidelines sentence. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

Green contends that his 211-month sentence was substantively unreasonable because it "was not necessary to deter [him] from future criminal conduct, protect the public from his crimes or provide him with the necessary substance abuse treatment." He does not explain how the district court "failed to take any of Green's positive sentencing factors into account pursuant to § 3553." Rather, the district court weighed each of the relevant factors—such as Green's personal characteristics and substance abuse history—and imposed a sentence that it found sufficient but not greater than necessary.

Although Green received the longest sentence among his co-conspirators, he does not demonstrate that his sentence leads to an unwarranted national disparity. *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008); *see also United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Moreover, a number of factors might result in legitimate co-defendant disparities, including 'differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.'" (quoting *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008))). Thus, Green has not rebutted the presumptive reasonableness of his bottom-of-the-guidelines sentence, and we uphold his sentence as substantively reasonable. *See Vonner*, 516 F.3d at 382.

**AFFIRMED**.