NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0256n.06

No. 22-3354

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 07, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| LUIS GARZA, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: KETHLEDGE, STRANCH, and MATHIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Defendant Luis Garza was pulled over for speeding, and a series of searches of his car and house uncovered drugs and a firearm. He pled guilty to a two-count indictment but objected to his offense level under the United States Sentencing Guidelines and moved for a departure based on time served on a state parole violation related to the same incident. The district court overruled both objections and declined the motion for a departure; Garza challenges those rulings on appeal. Finding no error, we **AFFIRM**.

## I.  INTRODUCTION

On October 24, 2019, law enforcement officers stopped Garza for speeding in Indiana and found a small amount of marijuana in the car's glovebox. They discovered that Garza was on parole in Ohio for aggravated robbery and arrested him. Officers searched Garza's house in Ohio and found controlled substances, including carfentanil, fentanyl, and methamphetamine; they also found a handgun and over $1,000 cash in a jewelry cabinet in the master bedroom. Garza admitted

that the methamphetamine and gun belonged to him. A subsequent search of Garza's car uncovered more drugs—this time, "pure" methamphetamine.

A grand jury indicted Garza in the Southern District of Ohio on one count of possession with intent to distribute methamphetamine, carfentanil, and fentanyl and one count of possession of a firearm by a felon, and he pled guilty on both counts. The Presentence Investigation Report (PSR) held Garza responsible for a total converted drug weight of 16,679.71 kilograms—nearly all of which related to the 811.9 grams of "pure" or "actual" methamphetamine found in his car. The PSR recommended a two-level enhancement for possession of a firearm in connection with a drug-trafficking offense and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 33.

Garza made several objections to the PSR, but only two are relevant to this appeal. First, he objected to the drug weight calculation. He did not dispute that the converted drug weight was calculated in accordance with the relevant Guideline § 2D1.1(c); rather, he asked the district court to depart from the Guidelines on policy grounds, arguing that the disparate treatment of "Methamphetamine (Actual)" and "Methamphetamine" warranted a four-level downward variance. Second, Garza contended that the two-level enhancement under Guideline § 2D1.1(b)(1) for possession of a firearm in connection with a drug-trafficking crime was not applicable. Garza also moved for a departure under Guideline § 5K2.23 to account for the time he served in state custody for the parole violation resulting from the charges.

At sentencing, the district court overruled both objections and denied the motion for a departure. It calculated a Guidelines range of 188 to 235 months and imposed a sentence of 188 months' imprisonment.

## II. ANALYSIS

Garza appeals the judgment in his case, raising three issues. First, he argues that the district court's sentence was procedurally unreasonable because the court chose not to adopt his policy argument regarding the proper converted-drug-weight calculation and failed to adequately explain that choice. Second, he argues that the district court clearly erred in applying the two-level enhancement under § 2D 1.1(b)(1). Finally, Garza contends that the district court abused its discretion in declining to depart downward under § 5K2.23 to allow credit for his time served in state custody. We take each in turn.

### A. Procedural Reasonableness

We review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). A sentence is procedurally reasonable where "the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] factors[.]" *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020). Within-Guidelines sentences are afforded a rebuttable presumption of reasonableness. *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019).

Garza argues that the district court abused its discretion by refusing to vary downward based on his policy argument concerning the Guidelines' treatment of pure methamphetamine. When calculating a converted drug weight, the Guidelines treat pure or "actual" methamphetamine ten times more severely than methamphetamine mixtures. *See* USSG § 2D1.1 comment. (n.8(D)). For example, in this case, the 811.9 grams of pure methamphetamine converted to 16,238 kilograms of converted drug weight; the same amount of methamphetamine mixture would convert to only 1,623 kilograms. Garza raises policy arguments supporting his claim that courts should depart from the Guidelines' disparate treatment of pure methamphetamine. But the district court

did "not find this policy argument persuasive," and overruled Garza's objection, citing our decision in *United States v. Alonzo*, which held that a district court did not impose a procedurally unreasonable sentence in rejecting the same policy argument. 811 F. App'x 301, 305-06 (6th Cir. 2020).

In *Alonzo*, we noted that "[t]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Id.* at 306 (quoting *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011)) (original emphasis in *Brooks*); *United States v. Lynde*, 926 F.3d 275, 280 (6th Cir. 2019) ("[A] district court cannot be said to have abused its discretion merely because it *followed* [the Guidelines] (and agreed with its policies)."). A problem does arise, however, when a district court "'fail[s] to appreciate the scope of its discretion' and 'indicates that policy disagreements are not a proper basis to vary.'" *Kamper*, 748 F.3d at 742 (quoting *United States v. Johnson*, 407 F. App'x 8, 10 (6th Cir. 2010)). That error did not occur here. The district court demonstrated an understanding of Garza's policy argument and rejected the argument—not because it was bound to but because it expressly found the argument unpersuasive.

Nor did the court inadequately explain its rejection of this argument. It did not need to respond "point-by-point" to defend the Guidelines treatment of pure methamphetamine. *See United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010). Review of the record shows that the district court "conduct[ed] a meaningful sentencing hearing and truly consider[ed]" Garza's arguments. *Id.*

### B.    Firearm Enhancement

We review findings of fact at sentencing under the clear-error standard, which requires a "definite and firm conviction that a mistake has been committed" for reversal. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)).  Guideline § 2D1.1(b)(1) provides a two-level enhancement for possessing a firearm during the commission of a drug offense.  Constructive possession is sufficient.  *See id.* The Government bears the initial burden of proving these facts by a preponderance of the evidence; if it is successful, there is a presumption that the firearm was "connected with the offense of conviction."  *Id.* at 187-88.  The enhancement then applies unless the defendant can demonstrate that it is "clearly improbable that the weapon was connected with the offense."  *Id.* at 188 (quoting USSG § 2D1.1 comment. (n.11(A)).

Garza contends that the district court clearly erred in finding that the Government met its burden to show he possessed a firearm during the commission of a drug offense.  The court overruled Garza's objection and applied the enhancement because, based on the "uncontested facts . . . in the PSR," it found Garza constructively possessed the firearm "at the time the narcotics were recovered," and had failed to show it was "clearly improbable" that the weapon was connected with the drug-possession offense.  Garza does not challenge the finding that he constructively possessed the firearm; rather, he disputes that his possession occurred during the commission of a drug offense.

Garza pled guilty to possessing with intent to distribute drugs, some of which were found in his basement and his shed when law enforcement searched his home.  During the search, officers found a firearm in a cabinet drawer in the master bedroom.  Garza is correct that we have affirmed a district court's *refusal* to apply this enhancement to similar facts, *see United States v. Peters*,

15 F.3d 540, 542 (6th Cir. 1994), but that decision only underscored "our deferential stance with respect to application of the Sentencing Guidelines to the particular facts of a case," *id.* at 546. Such deference applies here, and review of the record shows that the district court did not clearly err in finding that Garza had constructive possession during the commission of a drug offense. *See United States v. Snyder*, 913 F.2d 300, 303-04 (6th Cir. 1990) (affirming application of enhancement where defendant constructively possessed firearms in bedroom nightstand and drugs were found in basement).

#### C. Departure for Time Served

Our review of a district court's decision not to grant a downward departure is limited to where "the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure," and "we presume that the district court understood its discretion, absent clear evidence to the contrary." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). Garza argues that the district court forfeited its discretion to consider a downward departure under Guideline § 5K2.23 for time served on his state parole violation.

Guideline § 5G1.3 advises district courts on how to account for prior undischarged terms of imprisonment when sentencing a defendant on the instant offense. Section 5G1.3(b) requires an adjustment to be made for "any period of imprisonment already served on [an] undischarged term" where that term "resulted from another offense that is relevant conduct to the instant offense." USSG § 5G1.3(b). Section 5G1.3(d) provides that in any case involving an undischarged term of imprisonment that is not covered by subsections (a)-(c), a district court has discretion to impose the sentence for the instant offense to run "concurrently, partially concurrently, or consecutively." USSG § 5G1.3(d). Relevant here, Section 5K2.23 provides a district court with discretion to depart downward for *discharged*, *i.e.*, completed, terms of

imprisonment where § 5G1.3(b) "would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." USSG § 5K2.23.

In addition to the federal offenses at issue in this case, Garza's conduct violated his state parole in Ohio. Because of that violation, he served and discharged an approximately 270-day state prison sentence before being indicted in federal court. Garza moved for a downward departure pursuant to § 5K2.23 for this discharged term of imprisonment. The district court denied the departure because it found that Garza's term of imprisonment for a state parole violation was governed by § 5G1.3 subsection (d), not subsection (b), and therefore, § 5K2.23 was not implicated.

The district court did not err. The Guidelines commentary indicates that "*[s]ubsection (d)* applies in cases in which the defendant was on . . . [state parole] . . . at the time of the instant offense and has had such [] parole . . . revoked," not subsection (b). USSG § 5G1.3 comment. (n.4(C)) (emphasis added). Therefore, § 5K2.23 was not implicated by Garza's discharged term of imprisonment for a state parole violation, and there is no "clear evidence" that the district court otherwise misunderstood its discretion in fashioning Garza's sentence. *See Santillana*, 540 F.3d at 431.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.